IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
------------------------------------------------------------X
THREE R LLC and OBSTETRICAL              :
ASSOCIATES, INC. Individually and on Behalf of :  No.  1:18-cv-30133-PBS
Itself and all Others Similarly Situated,  :
                                         :
                    Plaintiffs,          :
                                         :
        -against-                        :  AMENDED CLASS
                                         :  ACTION COMPLAINT
                                         :
CYNOSURE, INC,                           :
                                         :  JURY TRIAL DMANDED
                                         :
                    Defendant.           :
------------------------------------------------------------X
```

## INTRODUCTION

Plaintiffs THREE R LLC and OBSTETRICAL ASSOCIATES, INC.,

("Plaintiffs"), by and through their undersigned attorneys, alleges, upon information and

belief, except as to the allegations concerning Plaintiffs themselves, which Plaintiffs

allege upon personal knowledge, as follows:

## NATURE OF THE ACTION

1.      On July 30, 2018, the United States Food and Drug Administration

("FDA") announced that it had warned several companies to stop marketing laser devices

for procedures often and colloquially referred to as "vaginal rejuvenation." As succinctly

explained by FDA Commissioner Dr. Scott Gottlieb, the FDA had

    recently become aware of a growing number of manufacturers marketing "vaginal

    rejuvenation" devices to women and claiming these procedures will treat

    conditions and symptoms related to menopause, urinary incontinence or sexual

function. The procedures use lasers and other energy-based devices to destroy or

reshape vaginal tissue. These products have serious risks and don't have adequate

evidence to support their use for these purposes. We are deeply concerned women

are being harmed.

Statement from FDA Commissioner Scott Gottlieb, M.D., on efforts to safeguard

women's health from deceptive health claims and significant risks related to devices

marketed for use in medical procedures for "vaginal rejuvenation", dated July 30, 2018,

available at

https://www.fda.gov/NewsEvents/Newsroom/PressAnnouncements/ucm615130.htm; *see*

*also* FDA Warns Against Use of Energy-Based Devices to Perform Vaginal

'Rejuvenation' or Vaginal Cosmetic Procedures: FDA Safety Communication, dated July

30, 2018, available at

https://www.fda.gov/medicaldevices/safety/alertsandnotices/ucm615013.htm (text of

warning) ("July 30, 2018 FDA Warning").

     2.     As Commissioner Gottlieb further explained, while the FDA had cleared

various laser and other energy-based devices to treat such conditions as abnormal or pre-

cancerous cervical or vaginal tissue or genital warts, "the safety and effectiveness of

these devices hasn't been evaluated or confirmed by the FDA for 'vaginal rejuvenation.'"

*Id.* Nonetheless, companies who produce and sell these devices make "deceptive health

claims" and engage in "deceptive marketing of a dangerous procedure with no proven

benefit," which he stated was, in a word, "egregious." *Id.* As the July 30, 2018 FDA

Warning itself stated, using such devices for vaginal rejuvenation "may lead to serious

adverse events," including vaginal burns, scarring, pain during sexual intercourse, and recurring/chronic pain.  July 30, 2018 FDA Warning.

3.      Defendant Cynosure, Inc., ("Defendant" or "Cynosure") is one of the companies that has engaged in this egregious "deceptive marketing of a dangerous product".  It has unabashedly marketed and sold its MonaLisa Touch laser system as a vaginal rejuvenation device with promises that it will increase intimacy and improve sexual function – which, as the FDA can hardly have been clearer – are purposes for which it was not approved by the FDA and for which use there is no proven benefit.  The MonaLisa Touch is a most expensive device – costing doctors and health practices $150,000 or more.

4.      Plaintiffs Three R LLC and Obstetrical Associates, Inc. ("Obstetrical Associates") have suffered economic injury directly as a result of Cynosure's false and deceptive marketing scheme.  Plaintiff Three R LLC has, for two years, been making payments on a lease to purchase a MonaLisa Touch for purposes of treating vaginal atrophy.  The aggregate lease payments exceed $200,000.  Plaintiff Obstetrical Associates purchased a MonaLisa Touch from Cynosure for approximately $140,000. Obstetrical Associates took out a loan to pay for a portion of the purchase price, and it continues to make payments on the loan.  In light of the July 30, 2018 FDA Warning, Plaintiffs can no longer use the MonaLisa Touch unit, although loan payments remain due.

5.      Accordingly, to address the financial injury caused by Defendant's unlawful deceptive selling of a dangerous medical device for purposes for which the FDA did not approve and for which the device has no proven benefit, Plaintiffs bring this

action against Cynosure on their own behalf and on behalf of those others similarly situated for breach of the implied warranty of merchantability and fitness for a particular purpose and violation of Massachusetts' Consumer Protection Act, Mass. Gen. Laws ch. 93A and/or other similar laws in effect in other states.

## JURISDICTION AND VENUE

6.     This Court has Jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332(d) and the Class Action Fairness Act ("CAFA"). The parties are minimally diverse and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

7.     Plaintiffs' claims involve matters of national or interstate interest.

8.     Defendant is subject to personal jurisdiction in that Cynosure's principal place of business is in this District.

9.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 as Cynosure resides in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## THE PARTIES

10.     Plaintiff Three R LLC, was, at all relevant times, a limited liability corporation headquartered in Rhode Island.  Its owners are all natural persons domiciled the State of Rhode Island.

11.     Plaintiff Obstetrical Associates, was, at all relevant times, a corporation headquartered in Massachusetts and incorporated in Massachusetts.

12.     Cynosure is a corporation incorporated in Delaware and maintains its principal place of business at 5 Carlisle Road, Westford, MA 01886.

13.     Cynosure was and is doing business in the State of Massachusetts, including Middlesex County.

## STATEMENT OF FACTS

### The MonaLisa Touch

14.     The MonaLisa Touch is a laser system manufactured and marketed by Cynosure.  The marketing of the device by Cynosure was, upon information and belief, directed from and disseminated by Cynosure from its corporate headquarters in Massachusetts.

15.     In its July 24, 2018 letter to Cynosure, Inc. the FDA stated that the MonaLisa Touch had been cleared "for incision, excision, ablation, vaporization and coagulation of body soft tissues in medical specialties including aesthetic (dermatology and plastic surgery), podiatry, otolaryngology (ENT), gynaecology, neurosurgery, orthopaedics, general and thorasic surgery (including open and endoscopic), dental and oral surgery and genitourinary surgery."  July 24, 2018 Letter from Cesar A. Perez, PhD, Chief of the Surveillance and Enforcement Brach, Division of Premarket and Labeling Compliance, Office of Compliance, Center for Devices and Radiological Health to Connie Hoy, Official Correspondent, Cynosure, Inc.

16.     On July 30, 2018, the FDA issued a warning in which it stated that it had not "cleared or approved for marketing" the MonaLisa Touch, or any such "energy based devices," for purposes of "vaginal rejuvenation" or "any symptoms related to menopause, urinary incontinence, or sexual function."  July 30, 2018 FDA Warning.

17.     The FDA explained that vaginal rejuvenation is "an ill-defined term; however, it is sometimes used to describe non-surgical procedures intended to treat

vaginal symptoms and/or conditions including, but not limited to: vaginal laxity; vaginal atrophy, dryness or itching; pain during sexual intercourse; pain during urination; [or] decreased sexual sensation." *Id.* The term has received substantial popular and colloquial use over the last several years.

**Cynosure Markets the MonaLisa Touch As a Vaginal Rejuvenator**

18.    Cynosure unabashedly markets the MonaLisa Touch as a vaginal rejuvenator.

19.    During the relevant period, the MonaLisa Touch's website, www.smilemonalisa.com ("the "Website"), essentially described the MonaLisa Touch as a vaginal rejuvenator and markets it for such uses. It stated that the MonaLisa Touch is "[a] treatment that renews intimacy and changes lives" and "[a] treatment for the painful symptoms of menopause, including intimacy." As depicted on the Website, the MonaLisa Touch contains a probe meant to be inserted into the vagina that shoots a laser onto the vaginal wall:



20.    On the Website, Defendant affirmatively represented and stated that "[t]here are virtually no side effects or discomfort with this treatment."

21.     The Website featured several testimonials.  In "Melinda's Story," a woman on whom the MonaLisa Touch was used stated:

> So, I'm single, & I had gone a little stretch without being in an intimate relationship. And then I was in an intimate relationship and I noticed that I kept on pushing away, because it was painful. I thought maybe I wasn't attracted to the person enough, or he wasn't doing his job or something (laugh). You know…seriously. And it really wasn't until later that I started realizing this was my body that was having a reaction, to be honest with you. I actually did notice a difference after my first procedure, and then going back for the second, a huge difference there for me, because I was an unusual case. Then between second and third again just for me you know like a total opening, a softening, receptivity, sensitivity, that I just hadn't had for years and years and years. And so now it's like Yah, bring it on (laugh). Probably what this procedure, the MonaLisa Touch did for me is it gave me back confidence. I'm single, and it made me want to date again. I can feel like I can have a full relationship. So, I feel like I don't have to hold back anymore. I can be spunky, and playful & confident, & alive & vibrant, & just bring everything that I have back to the table, because I think I was holding back. And there's no need to. There's really no need to hold back anymore."

http://www.smilemonalisa.com/melindas-story/.  As of this date, the transcript of the Melinda's Story video remains available online, though the Melinda's Story video itself, and other client testimonial videos, was removed from the MonaLisa Touch homepage on or about August 10, 2018.

22.     Other marketing materials similarly clarify that the MonaLisa Touch is marketed for, and meant to be used for, vaginal rejuvenation.  Accessories for the MonaLisa touch include vaginal probes.  Candidates for the MonaLisa Touch include "[p]atients who present with gynecologic changes due to decrease in estrogen."

23.     Nowhere on the Website or other marketing materials does Defendant state that the MonaLisa Touch was not approved for vaginal rejuvenation purposes; to the

contrary, Defendant implies that the device has been approved by the FDA for this purpose.

24.     Indeed, nowhere on the Website does Defendant materially state or explain or market the MonaLisa Touch for the purposes for which the FDA did, in fact, approve the device for use.

25.     Upon information and belief, the MonaLisa Touch is sold or leased by Defendant through related parties throughout the Country.  The Website indicates that providers use the MonaList Touch in at least the following states: Alabama, California, Florida, Georgia, Indiana, Illinois, Kentucky, Lousiana, Michigan, New Jersey, New York, North Carolina, Pennsylvania, Rhode Island, Ohio, South Carolina, Tennessee, Texas, and Wisconsin.

**Using the MonaLisa Touch for Vaginal Rejuvenation Presents a Significant Risk of Harm**

26.     On July 30, 2018, the FDA issued a "Safety Communication" entitled, **"FDA Warns Against Use of Energy-Based Devices to Perform Vaginal 'Rejuvenation' or Vaginal Cosmetic Procedures: FDA Safety Communication."**  July 30, 2018 FDA Warning."

27.     The July 30, 2018 FDA Warning was directed at patients and "health care providers who perform vaginal procedures using energy-based devices."  *Id.*

28.     It states that treating vaginal rejuvenation "or any symptoms related to menopause, urinary incontinence, or sexual function" through the application of "energy-based therapies to the vagina may lay to serious adverse events, including vaginal burns, scarring, pain during sexual intercourse, and recurring/chronic pain."  *Id.*

8

29.     The FDA added that "certain device manufacturers may be inappropriately marketing their energy-based devices for uses," like vaginal rejuvenation, "that are outside of their cleared or approved intended uses."  *Id.*

30.     The MonaLisa Touch is one such device and Defendant was one of the manufacturers to which the FDA directed its warning.  The MonaLisa Touch is a device that can cause serious adverse events, including vaginal burns, scarring, pain during sexual intercourse, and recurring/chronic pain.

31.     In marketing and selling the MonaLisa Touch for purposes of vaginal rejuvenation, Cynosure did not disclose that the MonaLisa Touch may be unsafe for vaginal rejuvenation, and, rather, impliedly or expressly represented that it would be safe for vaginal rejuvenation.  Cynosure's actions were knowing or willful.

32.     Unless enjoined, Cynosure will continue to market and sell the MonaLisa Touch for purposes of vaginal rejuvenation.

**Plaintiff Three R LLC Could Not Use the MonaLisa Touch After Its Dangers Were Disclosed**

33.     The business relationship between Plaintiff Three R LLC and Cynosure began when Cynosure called asking to send a company representative to make a presentation about the MonaLisa Touch.

34.     On or about early April 2016, a Cynosure representative named Andrew subsequently had a meeting with and made an in-person presentation to Dr. Marilyn Powers.  Marilyn Powers is a partner of Three R LLC.  On or about the period of the next six weeks, Andrew made two or three additional, in-person presentations to both Dr. Powers and Dr. Salk, the President of Three R LLC.

35.     During his presentations, Andrew also discussed finances.  He explained that a certain number of patients could be treated per month with the MonaLisa Touch, and that the treatment would be profitable for the providers.  Andrew talked about how much to bill patients for a series of treatments.  He said the MonaLisa Touch presented no risk to patients.

36.     Additionally, Andrew discussed a marketing budget during his presentations.  He advised that Cynosure would reduce the purchase price by a certain amount, and that the amount of the discount could be put toward marketing.

37.     Andrew then directed Dr. Salk to Heartland Business Credit, which is, on information and belief, the agent of Cynosure.

38.     Three R LLC's MonaLisa Touch was leased on May 31, 2016 from Heartland Business Credit by Caring for Women, Inc., a related company operating in the same medical office as Three R LLC and acting as its agent for purposes of the lease. The lease was a purchase lease.  The total lease payment over a 66 month period is $204,076.00.  Caring for Women, Inc. is owned by Drs. Salk, Powers, and Wortman, the three partners in Three R LLC.

39.     The purpose of the lease was to obtain a unit that would treat vaginal atrophy and remedy such atrophy through vaginal rejuvenation.  Three R LLC has made the payments on the lease and has received all revenue from operation of the MonaLisa Touch, and is obligated to make all future payments on the lease on behalf of Caring for Women, Inc.

40.     After the lease was signed, Cynosure informed Dr. Salk and Dr. Powers that if they could provide demonstrations of the MonaLisa Touch to other providers, and

if those providers purchased or leased the MonaLisa Touch, Cynosure would provide a certain amount of money.   On two occasions, providers came to observe Dr. Salk and Dr. Powers use the MonaLisa Touch.  One of those providers then leased or purchased the device, and Cynosure extended the promised check.

41.     After the MonaLisa Touch was leased, Cynosure arranged MonaLisa Touch trainings for Dr. Salk and Dr. Powers all in furtherance of its use for correcting vaginal apathy.  Likewise, on or about June 2016, Dr. Powers attended a training in Cincinnati with Dr. Jeff Dell and on  or about early June 2016, Dr. Salk attended a training in Tennessee with Dr. Mickey Karram.  These trainings featured, presentations with slides that contained MonaLisa Touch branding and were, upon information and belief, created or provided by Cynosure, and all related to the use of the device for correcting vaginal apathy.

42.     Subsequent to the lease, Cynosure directed Dr. Powers to a Cynosure employee named Gregory Jeanty who advised on media issues.  Mr. Jeanty advised on how to order pamphlets and posters discussing the MonaLisa Touch.  Cynosure connected Three R LLC with WebMD, which helped design a website for Three R LLC, which was doing business under the name "Revive."  The website was www.revivegyn.com.  That webpage linked to the Cynosure webpage.  The www.revivegyn.com webpage identified a dedicated phone number that patients could call to speak with Three R LLC to arrange treatments.

43.     Cynosure also advised Three R LLC to send a letter to phyicians and patients.  A letter was then created on Revive letterhead so Three R could contact patients and other providers about the MonaLisa Touch.

44.     On August 2, 2018, Caring for Women, Inc. received a letter from Cynosure advising it of the July 30, 2018 FDA Warning.

45.     At that point, providers, including Plaintiff and the Class Members, could not use the MonaLisa Touch on patients because if they did so, they would subject patients to potential adverse harms and subject themselves to the possibility of substantial liability.  As such, Three R LLC immediately stopped using the MonaLisa Touch.  It took down the www.revivegyn.com webpage.

46.     Three R LLC continues and remains obligated to make lease payments for a device that cannot be safely or economically used.  The device is unmerchantable and/or unfit for the particular purpose for what it was marketed and sold by Defendant.

47.     Following the FDA announcement, Drs. Salk and Powers met with patients who received treatment with the MonaLisa Touch and were scheduled to receive additional treatments.  They informed the patients that they would no longer be offering the treatment, and refunded the patients for any prepaid treatments the patients will not be receiving.  These refunds were paid by Three R LLC.

**Plaintiff Obstetrical Associates Could Not Use the MonaLisa Touch After Its Dangers Were Disclosed**

48.     The business and contractual relationship between Plaintiff Obstetrical Associates and Cynosure began when a Cynosure representative, likely Christopher Andrew, reached out in the Spring of 2015 regarding the MonaLisa Touch.

49.      On or about February 2015, Christopher Andrew of Cynosure visited Obstetrical Associates and explained that the MonaLisa Touch was a revolutionary treatment for vaginal atrophy with no negatives.  Andrew communicated that the device

12

was FDA approved but in so doing failed to explain that it was not FDA approved for the purposes of treating vaginal apathy.  Dr. Stephen Gagliardi, the President and sole owner of Obstetrical Associates, understood this to mean that the MonaLisa Touch was FDA approved for purposes of treating vaginal atrophy, which is the only use that was discussed with him.

50.     On or about March 31, 2015, Obstetrical Associates purchased a MonaLisa Touch directly from Cynosure for approximately $140,000.  Obstetrical Associates paid a portion of the purchase price and financed the balance with a loan.

51.     The purpose of the purchase was to obtain a unit that would treat vaginal atrophy and remedy such atrophy through vaginal rejuvenation.

52.     Subsequent to the purchase, Cynosure arranged for a training session with Dr. Mickey Karram.  Dr. Gagliardi was unable to attend. On or about May 2015, Dr. Gagliardi took a training course with a Dr. Jeffrey Dell.  The training featured, presentations with slides that contained MonaLisa Touch branding and were, upon information and belief, created or provided by Cynosure, and were provided with respect to the use of the device for correcting vaginal apathy.

53.     Cynosure also provided Obstetrical Associates with a Waiting Room DVD for the MonaLisa Touch, as well as posters and marketing support.

54.     Dr. Gagliardi learned about the FDA warning on or about August 2018.

55.     At that point, providers, including Plaintiff Obstetrical Associates and the Class Members, could not use the MonaLisa Touch on patients because if they did so, they would subject patients to potential adverse harms and subject themselves to the

possibility of substantial liability.  As such, Obstetrical Associates immediately stopped using the MonaLisa Touch.

57.     Obstetrical Associates continues and remains obligated to make loan payments for a device that cannot be safely or economically used.  The device is unmerchantable and/or unfit for the particular purpose for what it was marketed and sold by Defendant.

## CLASS ALLEGATIONS

57.     Plaintiffs sue on their own behalf and on behalf of on behalf of all purchasers or lessors of the MonaLisa Touch (the DEKA SmartXide Laser System or similar model) nationwide (the "Class"), pursuant to FED. R. CIV. P. 23(a), (b)(2) and (b)(3) seeking to assert the claims set forth below.

58.     The Class is so numerous that joinder of all members is impracticable. Although the precise number of MonaLisa Touch owners is unknown, the Website identifies 99 healthcare providers who used the MonaLisa Touch just within 300 miles of Westford, Massachusetts alone.  The number sold and identity of all purchasers of the MonaLisa Touch is known to Defendant, is readily identifiable, and can be located through Defendant's records.

59.     There are questions of law and fact common to the members of the Class and that predominate over any questions solely affecting the individual members of the Class.  Questions of fact and law common to the Class that will materially advance the litigation include, without limitation:

> a.     Whether Defendant marketed the MonaLisa Touch for vaginal rejuvenation purposes;

14

b.    Whether such purposes were uses unapproved by the FDA for the device;

c.    Whether Defendant impliedly or directly represented that the MonaLisa Touch had been approved for such purposes by the FDA or failed to inform those to whom Defendant marketed and sold the MonaLisa Touch that it had not been approved for such purposes by the FDA;

d.    Whether the use of the MonaLisa Touch for the unapproved purposes for which Defendant marketed the device presents a threat of possibly causing adverse events, including vaginal burns, scarring, pain during sexual intercourse, and recurring/chronic pain such that the threat of such events renders the device unmerchantable or unfit for its intended purposes;

e.    Whether Defendant explicitly or impliedly sold the MonaLisa Touch as a device that did not present a threat of possibly causing adverse events, including vaginal burns, scarring, pain during sexual intercourse, and recurring/chronic pain and/or whether Defendant withheld or omitted such material facts as to the threat of possibly causing such adverse events from those to whom it marketed and sold the device;

f.    Whether Cynosure is liable for all damages claimed by Plaintiffs and the Class, including, without limitation, compensatory, punitive

and/or statutory damages, restitution, interest, costs and disbursements, and attorneys' fees; and

g.       Whether Cynosure should be enjoined from continuing to market and sell the MonaLisa Touch in a misleading and deceptive manner, as set forth in this Complaint.

60.      Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs have the same interests in this matter as all other members of the Class.

61.      Plaintiffs are adequate class representatives, are committed to pursuing this action and have retained competent counsel experienced in class action litigation.

62.      Class certification of Plaintiffs' claims is appropriate pursuant to FED. R. CIV. P. 23(b)(2) because Cynosure has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to the Class under the causes of action set forth herein, which are alleged in the alternative.   The members of the Class are also entitled to injunctive relief to end Cynosure's common and uniform policy under the claims set forth herein.

63.      Class certification of Plaintiffs' claims is also appropriate pursuant to FED. R. CIV. P. 23(b)(3) because questions of law and fact common to the Class predominate over questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

64.      Plaintiffs know of no difficulty that would be encountered in the management of this litigation that would preclude its maintenance as a class action.

**FIRST CLAIM FOR RELIEF:**
**DECEPTIVE ACTS OR PRACTICES PROHIBITED BY MASSACHUSETTS**
**GEN. LAWS ch.93A AND/OR OTHER SIMILAR LAWS IN EFFECT IN OTHER**
**STATES**
**(Brought on Behalf of Plaintiffs and the Class)**

65.     Plaintiffs incorporate by reference paragraphs 1-64 as though fully set forth herein.

66.     Cynosure, Plaintiffs, and the Class members are "persons" within the meaning of Mass. Gen. Laws ch. 93A, § 1(a).

67.     Cynosure is engaged in "trade" or "commerce" within the meaning of Mass. Gen. Laws ch. 93A, § 1(b).

68.     The Massachusetts unfair trade practices protection law ("Massachusetts Act") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2.

69.     In the course of its business, Cynosure, through its agents, employees, and/or subsidiaries, violated the Massachusetts Act as detailed in this Complaint. Specifically, in marketing, offering for sale, and selling the MonaLisa Touch for vaginal rejuvenation purposes notwithstanding that it was not approved by the FDA for those purposes and notwithstanding that such use presented a risk of harm to those patients upon whom the device would be used, Cynosure engaged in one or more of the following unfair or deceptive acts or practices as prohibited by Mass. Gen. Laws ch. 93A, § 2:

      a.  Causing likelihood of misunderstanding as to the fitness and safety of the MonaLisa Touch for purposes of vaginal rejuvenation;

      b.  Representing that the MonaLisa Touch has approval, characteristics, uses, or benefits that it does not have;

c.  Representing that the MonaLisa Touch is of a particular standard, quality and grade when it is not; and/or

d.  Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale of the Mona Lisa Touch, whether or not any person has in fact been misled, deceived or damaged thereby.

70.  Defendant's misleading scheme and concealment of the true characteristics of the MonaList Touch and its selling of the device usable for vaginal rejuvenation purposes, which was information as to which it had or should have had superior knowledge as a maker and seller of medical devices and upon which Plaintiffs and the Class relied, were material to Plaintiffs and the Class, as Defendant intended. Had they known the truth, Plaintiff and the Class would not have purchased or leased the MonaLisa Touch, or—if the MonaLisa Touch's true nature had been disclosed—would have paid significantly less for the MonaLisa Touch or leased it for significantly less.

71.  Cynosure had an ongoing duty to Plaintiffs and the Class to refrain from unfair and deceptive practices under the Massachusetts Act in the course of its business. Specifically, Cynosure owed Plaintiffs and Class members a duty to disclose all the material facts concerning the MonaLisa Touch because it possessed exclusive knowledge that it intentionally concealed it from Plaintiffs and the Class, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

18

72.     Plaintiffs and the Class members suffered ascertainable loss and actual

damages as a direct and proximate result of Cynosure's concealment, misrepresentations,

and/or failure to disclose material information.

73.     Cynosure's violations present a continuing risk to Plaintiffs and the Class,

as well as to the general public.  Cynosure's unlawful acts and practices complained of

herein affect the public interest.

74.     Plaintiffs and the Class seek an order pursuant to Mass. Gen. Laws ch.

93A § 9 enjoining Cynosure's unfair and/or deceptive acts or practices, and awarding

damages, punitive damages, and any other just and proper relief available under the

Massachusetts Act.

**SECOND CLAIM FOR RELIEF:**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY AND FITNESS**
**FOR A PARTICULAR PURPOSE**
**(Mass. Gen. Laws Ch. 106 §§ 2-314 and 2A-212 AND/OR OTHER SIMILAR**
**LAWS IN EFFECT IN OTHER STATES)**
**(Brought on Behalf of Plaintiffs and the Class)**

75.     Plaintiffs incorporate by reference paragraphs 1-64 as though fully set

forth herein.

76.     Cynosure was at all relevant times a "merchant" with respect to the

MonaLisa Touch under Mass Gen. Laws ch. 106 § 2-104(1) and is a "seller" under § 2-

103(1) (d) and/or other similar laws in effect in other states.

77.     The MonaLisa Touch is and was at all relevant times "goods" within the

meaning of Mass. Gen. Laws ch. 106 §§ 2-105(1) and 2A-103(1)(h) and/or other similar

laws in effect in other states.

78.     A warranty that the MonaLisa Touch was in merchantable condition and fit for its ordinary purpose for which it was used and/or for which it was intended to be used by Defendant in selling it is implied by law pursuant to Mass. Gen. Laws ch. 106 §§ 2-314 and 2A-212 and/or other similar laws in effect in other states.

79.     Cynosure sold the MonaLisa Touch though the MonaLisa Touch was not merchantable and/or fit for the purpose for which it was intended to be used by Defendant in violation of these implied warranties.

80.     Cynosure's breaches of the implied warranty of merchantability and/or fitness for a particular purposes caused damage to the Plaintiff and the Class. The amount of damages due will be proven at trial.

### THIRD CLAIM FOR RELIEF:
### UNJUST ENRICHMENT
### (Brought on Behalf of Plaintiffs and the Class)

81.     Plaintiffs incorporate by reference paragraphs 1-64 as though fully set forth herein.

82.     By virtue of the actions set forth above, Cynosure has received monies from its sales of the MonaLisa Touch, which monies were derived from Plaintiffs and the other members of the Class pursuant to their purchases and/or leases of the MonaLisa Touch.  When considered under the totality of the circumstances, particularly given Cynosure's false, misleading, and/or deceptive sales practices, Cynosure has been unjustly enriched to the detriment of Plaintiffs and the other members of the Class.

83.     Cynosure's retention of some or all of the monies it gained through its wrongful acts and practices would be unjust considering the circumstances of its obtaining those monies.

84.     Cynosure should be required to disgorge its unjustly obtained monies and to make restitution to Plaintiffs and the other members of the Class, in an amount to be determined, of the monies by which it has been unjustly enriched.


## PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendant as follows:

A.     For an Order certifying the Class and any other appropriate subclasses thereof under the appropriate provisions of Federal Rule of Civil Procedure 23, and appointing Plaintiffs and their counsel to represent such Classes and subclasses as appropriate under Rule 23(g);

B.     For injunctive relief;

C.     For compensatory, equitable, and/or restitutionary damages according to proof and for all applicable statutory damages under the causes of action set forth herein;

D.     For an award of attorneys' fees and costs;

E.     For prejudgment interest and the costs of suit; and

F.     For such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the Complaint.

Dated: October 4, 2018
     Rye Brook, NY

By: _____
Fran L. Rudich
Seth R. Lesser (admitted *pro hac vice*)
Michael H. Reed (admitted *pro hac vice*)
KLAFTER OLSEN & LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
Telephone: (914) 934-9200

Michael A. Galpern (admitted *pro hac vice*)
Eric G. Kahn (admitted *pro hac vice*)
JAVERBAUM WURGAFT HICKS KAHN
WIKSTROM & SININS, P.C.
100 Century Parkway, Suite 305
Mount Laurel, NJ 08054
Telephone:  (973) 379-4200

**ATTORNEYS FOR PLAINTIFF AND THE CLASS**